1

2

3

4

5

6

7

8                                UNITED STATES DISTRICT COURT

9                               NORTHERN DISTRICT OF CALIFORNIA

10                                     San Francisco Division

11

12   DAVE NAGY,                                    Case No.  14-cv-00038-HSG   (LB)

13                  Plaintiff,

14          v.                                     **REPORT & RECOMMENDATION**
                                                   **(ATTORNEY'S FEES)**
15   GROUP LONG TERM DISABILITY PLAN               Re: ECF No. 123
     FOR EMPLOYEES OF ORACLE
16   AMERICA, INC., et al.,

17                  Defendants.

18                                       **INTRODUCTION**

19          This is an ERISA disability-benefits case. The presiding district judge, the Honorable

20   Haywood S. Gilliam, Jr., has already reached a merits decision in the plaintiff's favor. (ECF No.

21   89.)[1] Judge Gilliam has referred this case to the undersigned magistrate judge to assess the

22   plaintiff's motion for attorney's fees under 29 U.S.C. § 1132(g)(1). Plaintiff's counsel seeks a total

23   of $272,710.50 in fees. (ECF Nos. 123, 137.) The defendants challenge this request. They argue

24   that fees should be denied outright. If fees are awarded, the defendants contend that the amount

25   sought is excessive; they take issue with both the hourly rates requested and the number of hours

26

27   ─────────────────────
     [1] Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the
28   ECF-generated page numbers at the top of documents.

     REPORT & RECOMMENDATION
     No. 14-cv-00038-HSG (LB)

expended. They suggest that any fee award should more than halve the plaintiff's request. (ECF No. 128.)

The undersigned held a hearing on this matter on January 12, 2017. (ECF No. 145.) The undersigned now recommends that Judge Gilliam award the plaintiff's attorney his requested hourly rates, but reduce the hours sought by 10% and, in the end, award the plaintiff $245,305.50 in fees.

## REQUEST FOR JUDICIAL NOTICE

The plaintiff asks the court to judicially notice the evidentiary exhibits that support his fees motion. (ECF No. 123-4.) These submissions are all declarations that were submitted in other lawsuits. (*See id.*) Court records are a proper subject of judicial notice. *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001); *Bonnel v. Best Buy Stores, L.P.*, 881 F. Supp. 2d 1164, 1168-69 (N.D. Cal. 2012). Normally, however, courts judicially notice  such records "to determine what issues were before that [other] court and were actually litigated." *Century Indemn. Co. v. Marine Grp., LLC*, 2015 WL 5144330, *2 (D. Or. Aug. 31, 2015) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006)). They generally do not judicially notice other courts' records to "establish[]" the facts contained within those records for purposes of the case that is then before them. *Century Indemnity*, 2015 WL 5144330 at *2 (citing *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003) and *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983)).

It is thus not certain that the *facts* inside the plaintiff's declarations are proper objects of judicial notice, even though they are enveloped in a court record. Being declared in a paper that is then filed in court does not somehow put facts themselves beyond "reasonable dispute" either because they are "generally known within the trial court's territorial jurisdiction" or because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b). It is one thing to judicially notice a court record in order to say, *The court did such and such*, or *The parties argued such and such*. It is another to notice a court filing in order to bootstrap into admission facts that do not otherwise, on their own, fall

United States District Court
Northern District of California

within the scope of judicial notice. That seems to stray from the core purpose of the judicial-notice rule. That said, the court thinks that it can accept the declarations simply as proffered evidence. With these qualifications, the court has considered that material in making this report.[2]

## STATEMENT

Plaintiff Dave Nagy sued the defendants — Group Long Term Disability Plan for Employees of Oracle America, Inc., and the plan administrator and insurer, Hartford Life and Accident Insurance Company — alleging that Hartford wrongly denied his claim for long-term-disability benefits.[3] After a bench trial, Judge Gilliam ruled in Mr. Nagy's favor.[4] Judge Gilliam overturned Hartford's denial of benefits and found "in favor of Nagy on both of the claims for relief in his complaint."[5] The plaintiff then moved for attorney's fees under 29 U.S.C. § 1132(g)(1). The plaintiff asks for $255,082.50 in attorney's fees, reflecting a $675 hourly rate and 377.9 hours of work; the plaintiff also seeks $17,628 in paralegal fees, reflecting a $195 hourly rate and 90.4 hours of work. This sums to a total fee request of $272,710.50.[6] The defendants have opposed the fees motion. They argue that the fee request should be denied outright.[7] They also challenge as unreasonable both the requested hourly rate and the number of hours spent.[8]

### 1. The Plaintiff's Evidence

#### 1.1 Attorney Rate and Hours

The plaintiff's attorney, Laurence Padway, has submitted declarations to establish $675 as a reasonable hourly rate for his own work, and $195 as the hourly rate for his paralegal, Felicia

---

[2] The defendants object to these declarations. (Opp. – ECF No. 128 at 19 n.5, 21 n.6.) The court has weighed the defendants' objection, but finds it without merit, and overrules it.

[3] *See generally* Compl. –ECF No. 1.

[4] ECF No. 89.

[5] *Id.* at 24.

[6] For all these numbers, see ECF No. 123 at 6, 18.

[7] *E.g.,* Opp. – ECF No. 128 at 11–12.

[8] *Id.*, *passim*.

REPORT & RECOMMENDATION
No. 14-cv-00038-HSG                3

Phillips. He has also submitted billing records to prove the hours that he and Ms. Phillips worked on this case.[9]

Mr. Padway graduated from the University of California, Berkeley, School of Law in 1978 and has practiced civil litigation in California ever since.[10] He is a Board Certified Trial Lawyer — a certification given by the National Board of Trial Advocacy and recognized as a practice specialization by the State Bar of California.[11] He is one of fewer than 100 attorneys in the United States "to earn the title of diplomat [from] the National College of Advocacy of . . . the American Association of Justice"; this credential required Mr. Padway to complete "400 hours of specific continuing legal education."[12] Mr. Padway also documents his more specific experience in the ERISA field. Over the past 15 to 20 years, he writes, he has increasingly taken on insurance and retirement work, approximately 80% of which has "involve[d] ERISA."[13] "Currently, and for the past several years, [his] practice has been almost entirely devoted these fields."[14] His experience "includes over 175 ERISA, disability, health or life insurance cases in the federal district and appellate courts, or California state courts."[15]

Mr. Padway states that, when he charges clients a "flat fee based upon [his] estimate of how long the work [in the given case] will take," he uses the $675 hourly rate.[16]

Judges in this district have awarded Mr. Padway $675 per hour or, in earlier years, something below that. In a recent ERISA decision, Magistrate Judge Westmore recommended that Mr. Padway receive a $675 hourly rate. *Lin v. Metro. Life Ins. Co.*, No. 4:15-cv-02126-SBA(KAW), slip op (N.D. Cal. Nov. 23, 2016) (report and recommendation).[17] Approximately two years ago,

---

[9] *See generally* ECF No. 123-1 to -4 (declarations and time sheets).

[10] Padway Decl. – ECF No. 123-1 at 1–2 (¶ 1).

[11] *Id.*

[12] *Id.*

[13] *Id.* at 3 (¶ 8).

[14] *Id.*

[15] *Id.* at 4 (¶ 9).

[16] *Id.* at 4–5 (¶ 11).

[17] As of this writing, Magistrate Judge Westmore's report and recommendation in *Lin* has not been adopted. No party in *Lin* filed a timely objection to the recommendation.

1   again in an ERISA case, Judge Orrick awarded Mr. Padway an hourly rate of $650. *James v. AT&T*

2   *W. Disability Benefits Program*, No. 3:12-cv-06318-WHO slip op. (N.D. Cal Dec. 22, 2014).

3   Finally, in three other ERISA cases dating back three to five years, judges in this district awarded

4   Mr. Padway $600 per hour. (Two such decisions involved a report and recommendation by the

5   undersigned magistrate judge.) *Kroll v. Kaiser Found. Health Plan*, No. 3:09-cv-01404-JSW(LB),

6   slip op. (N.D. Cal. Aug. 25, 2011); *Kroll v. Kaiser Found. Health Plan*, No. 3:11-cv-03863-

7   JSW(LB), slip op. (N.D. Cal. July 8, 2012); *White v. Coblentz, Patch and Bass, LLP Long Term*

8   *Disability Plan,* No. 3:10-cv-01855-BZ, slip op. (N.D. Cal. Oct. 31, 2011).

9       Mr. Padway also submits the declarations of other lawyers to support his requested hourly rate.

10   The most thorough of these submissions is by California attorney Richard M. Pearl.[18] In assessing

11   the requested $675 rate, Mr. Pearl draws upon: his own experience "handling attorneys' fee

12   litigation"; discussions with other lawyers and their declarations on such matters; fee declarations

13   that he has gathered in his own cases; fee applications and awards from other case; and "surveys

14   and articles on attorneys' fees in the legal newspapers and treatises."[19] Mr. Pearl concludes that an

15   hourly rate of $675 "is well in line with the non-contingent market rates charged for reasonably

16   similar services in cases by attorneys of reasonably similar qualifications and experience in the

17   San Francisco Bay Area."[20]

18       In a declaration originally filed in this district in July 2014, ERISA practitioner Julian Baum

19   explains that he "maintain[s] familiarity with the billing rates charged by experienced ERISA

20   litigators in the Ninth Circuit."[21] "Based on that knowledge, and based on my professional

21   experience," Mr. Baum writes, "it is my opinion and belief that [Mr.] Padway's billing rate of

22   $675 per hour is within the range of rates charged and collected by ERISA attorneys of

23   comparable experience, reputation and skill."[22]

24   _____

25   [18] Pearl Decl. – ECF No. 123-4 at 19–69.

26   [19] *Id.* at 20 (¶ 7).

    [20] *Id.* at 23–24 (¶¶ 8–9).

27   [21] Baum Decl. – ECF No. 123-4 at 72 (¶ 3).

28   [22] *Id.*

1    California attorney Susan Horner calls herself an "ERISA specialist" who has handled

2    "innumerable ERISA cases . . . since 1993."[23] She describes the complexity of ERISA litigation.[24]

3    Among other things, Ms. Horner explains that she conducts research "at least once a year" into

4    rates that California ERISA lawyers charge.[25] Her research shows that, as of 2009, courts in this

5    district had approved hourly ERISA rates of $550 and $575.[26]

6    Finally in this vein, the plaintiff offers the declaration of Chicago lawyer Mark DeBofsky.[27] An

7    ERISA practitioner himself, Mr. DeBofsky testifies to Mr. Padway's "outstanding reputation

8    among ERISA practitioners who represent plan participants in efforts to recover benefits due

9    them."[28] Mr. DeBofsky writes that, "Mr. Padway is well known by his peers as one of the leading

10   practitioners in the United States representing plan participants in the area of long-term disability

11   benefits."[29]

12   To establish the hours that he worked on this case, Mr. Padway has submitted his billing

13   records.[30]

14

15   **1.2 Paralegal Rate and Hours**

16   To justify Ms. Phillips's requested hourly rate of $195, Mr. Padway notes that she has worked

17   with him for more than 25 years.[31] He then writes:

18   > Judge White found paralegal time recoverable in *Perez v. Cate, 2009 U. S. Dist.*
     > *Lexis 882355* (N. D. Cal., 2009), no. C05-05241 JSW, and he found in that case

19   > that the average billing rate for a "legal assistant/paralegal" in this area was $200 an

20

21

---

22   [23] Horner Decl. – ECF No. 123-4 at 10, 13 (¶¶ 3, 7, 16).

23   [24] *Id.* at 10–12 (¶¶ 9–12).

     [25] *Id.* at 14–15 (¶ 22).

24   [26] *Id.* (table).

25   [27] DeBofsky Decl. – ECF No. 123-4 at 4–7.

26   [28] *Id.* at 6–7 (¶ 9).

     [29] *Id.* at 7 (¶ 9).

27   [30] ECF No. 123-2 at 1–18.

28   [31] *See* Phillips Decl. – ECF No. 123-3 at 1–2 (¶ 2).

United States District Court
Northern District of California

hour, and $253 an hour for a "Senior Assistant/Paralegal." Accordingly, Ms. Phillips requested rate of $195 an hour is below the average market rate for 2009.[32]

In his July 2014 declaration, Mr. Pearl opined that, "the hourly rate of $195 requested for Ms. Phillips . . . is well in line with the noncontingent market rates charged for reasonably similar services in cases for paralegals of reasonably similar qualifications and experience in the San Francisco Bay Area."[33]

Mr. Padway has submitted time sheets to establish the hours that Ms. Phillips worked on this case.[34]

## 2.   The Defendants' Response

### 2.1 Rates

The defendants first argue that fees should be denied outright.[35] Barring this, they argue that any fees awarded should be "substantially" less than what the plaintiff asks for.[36] They challenge as excessive both the requested hourly rates for Mr. Padway and Ms. Phillips and the number of hours that they spent on this case. The defendants argue that Mr. Padway's requested hourly rate of $675 should be reduced "to $500 per hour, if not lower"; they urge that Ms. Phillips's hourly rate be reduced from the $195 sought "to $125."[37] The defendants' broadest suggestion is that the requested "fees be reduced across the board by 50%."[38] Their specific suggestions would cut more deeply, as the discussion below will show.

The defendants do not offer evidence to establish lower appropriate rates for ERISA work of the type involved here, so much as give various arguments as to why the requested rates are objectionable.[39] They first argue that ERISA work is essentially not very sophisticated and does

---

[32] ECF No. 123 at 15.

[33] Pearl Decl. – ECF No. 123-4 at 24 (¶ 10).

[34] Phillips Decl. – ECF No. 123-3 at 4–11.

[35] Opp. – ECF No. 128 at 11–12.

[36] *E.g., id.* at 7.

[37] *Id.* at 7–8.

[38] *Id.* at 17.

[39] *See generally* ECF No. 128 at 21–25.

United States District Court
Northern District of California

not merit a $675 hourly attorney's fee.[40] They urge the court to view ERISA work as a mode of insurance litigation and, citing prevailing rates for "insurance defense" work, suggest an hourly rate between $200 and $300.[41] They point to a 2014 case in this district — *Pension Plan v. Yubacon, Inc.*, 2014 WL 5280759, *6 (N.D. Cal. Oct. 14, 2014) — in which the court "award[ed] rates of $195 and $205 per hour in an ERISA pension case."[42] They contend that Ms. Phillips should be compensated according to the rates in her home state of New Hampshire (from where she telecommutes), rather than the San Francisco Bay Area.[43] Finally, they offer several legal arguments urging that something other than a $675 rate should be applied.[44] The court addresses these arguments in the Analysis, below.

The defendants offer a comprehensive, line-by-line compendium of "itemized objections" to the plaintiff's time sheets.[45] (The court has considered all these objections and discusses its conclusions below.)

### 2.2 Hours

The defendants also challenge as excessive the number of hours that Mr. Padway and Ms. Phillips spent on this case. They have submitted a list of itemized objections that combs through the plaintiff's individual time entries. (ECF No. 128-1.) Their main argument is that most of the time spent was "excessive" and that the respective tasks should have been done more quickly. They challenge some of the entries as block billing and argue that some of Ms. Phillips's work was "secretarial" and should not be counted. While their review of the plaintiff's time entries is helpfully thorough, it is nonetheless true that the defendants offer only their own arguments, but no evidence, to show that the plaintiff's attorney's time was unreasonable. In the end, pointing to

---

[40] *See id.* at 21–22.

[41] *Id.*; Kojima Decl. – ECF No. 128-4 at 22 (table; "insurance defense").

[42] ECF No. 128 at 23.

[43] *Id.* at 24–25.

[44] *Id.* at 18–20, 23–25.

[45] Itemized Objections – ECF No. 128-2.

REPORT & RECOMMENDATION
No. 14-cv-00038-HSG                          8

their itemized objections, the defendants argue that "the 468 hours requested should be reduced to 212 hours."[46]

## ANALYSIS

### 1. The Plaintiff is Entitled to Attorney's Fees

#### 1.1 Legal Standard

ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C § 1132(g)(1).   In discussing ERISA fee awards, the Ninth Circuit has held that ERISA "should be liberally construed in favor of protecting participants in employee benefits plans." *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984); *accord, e.g., McElwaine v. US W., Inc.,* 176 F.3d 1167, 1172 (9th Cir. 1999). Section 1132(g)(1) should thus be "read broadly to mean that a plan participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under his plan, 'should ordinarily recover attorney's fees unless special circumstances would render such an award unjust.'" *Smith*, 746 F.2d at 589 (quoting *Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1356 (8th Cir. 1980) (quoting in turn *Newman v. Piggie Park Enters.,* 390 U.S. 400, 402 (1968)).

Before a court can award fees under § 1132(g)(1), though, it must first determine that the plaintiff has achieved "some success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–55 (2010). This must be more than a "trivial success on the merits" or a "purely procedural victor[y]," but if the court can "fairly call the outcome of the litigation some success on the merits," it need not conduct a "lengthy inquir[y]" into whether that success was "substantial" or "occurred on a 'central issue.'" *Id.* at 255 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 n.9 (1983)).

In deciding whether to award a successful plaintiff fees under § 1132(g)(1), a district court weighs the five factors set out in *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 452–53 (9th Cir. 1980). *E.g., Smith*, 746 F.2d at 589–90. "The five *Hummell* factors are:

---

[46] *Id.* at 18, 25.

REPORT & RECOMMENDATION
No. 14-cv-00038-HSG                                    9

1

2

3

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting in similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

4

5

*Smith*, 746 F.2d at 590 (citing *Hummell*, 634 F.2d at 453). "No one of the *Hummell* factors . . . is

6

necessarily decisive, and some may not be pertinent in a given case." *Smith*, 746 F.2d at 590

7

(quoting *Carpenters S. Cal. Admin. Corp. v. Russell,* 726 F.2d 1410, 1416 (9th Cir. 1984)).

8

9      **1.2 Analysis**

10         There is no doubt that Mr. Nagy "achieved some success on the merits." *See Hardt*, 560 U.S.

11     at 254–55. Judge Gilliam overturned Hartford's denial of benefits and found "in favor of [Mr.]

12     Nagy on both of the claims for relief in his complaint." (ECF No. 89 at 24.) The Supreme Court in

13     *Hardt* held that a plaintiff had achieved sufficient "success on the merits," and so awarded him

14     fees under § 1132(g)(1), where the district court remanded his claim for further administrative

15     consideration — albeit while finding "compelling evidence" that the plaintiff was disabled. *Hardt*,

16     560 U.S. at 255–56. In a closely related vein, under the *Hummell* test, the Ninth Circuit found that

17     an ERISA plaintiff had prevailed, so that his fees should not be reduced, where a settlement had

18     brought him "a portion," but not all, of what he had sued to recover. *See Smith*, 746 F.2d at 591

19     (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).[47] Mr. Nagy satisfies the initial, "success

20     on the merits" requirement.

21

22         **1.2.1   Culpability or bad faith**

23         The analysis thus turns to the *Hummell* factors. In applying these, the court "must keep at the

24     forefront ERISA's remedial purposes that 'should be liberally construed in favor of protecting

25

26

27     _____

       [47] In the cited part of *Smith*, strictly speaking, the Ninth Circuit was not discussing the initial "success" requirement, but the fifth "*Hummell* factor," which is addressed later in the main text. *See Smith*, 746 F.2d at 590–91.

28

United States District Court
Northern District of California

1  participants in employee benefit plans.'" *McElwaine*, 176 F.3d at 1172 (quoting *Smith,* 746 F.2d at

2  589).

3        The first *Hummell* factor considers the "degree of the [defendants'] culpability or bad faith."

4  *Hummell*, 634 F.2d at 453; *Smith*, 746 F.2d at 590. The undersigned has seen no evidence of the

5  defendants' bad faith. "Under Ninth Circuit precedent, . . . the [c]ourt cannot presume bad faith

6  simply because an insurance provider denied benefits under a plan." *Rangel v. Aetna Life Ins. Co.*,

7  2016 WL 1449539, *2 (N.D. Cal. Apr. 12, 2016) (citing *Smith*, 746 F.2d at 590). That said, "[t]he

8  *Hummell* factors reflect a balancing and [a court] need not find that each factor weighs in support

9  of fees." *McElwaine*, 176 F.3d at 1173. In particular, "bad faith is not a prerequisite to an ERISA

10  fee award." *Id.* (citing *Smith,* 746 F.2d at 590).

11

12        **1.2.2   Ability to pay**

13        The *Hummell* test next considers "the ability of the opposing parties to satisfy an award of

14  fees." *Smith*, 746 F.2d at 490. Strictly speaking, neither party has proffered evidence on this point.

15  Presumably, if the defendants could not pay the requested fee, they would have said so, and would

16  have proven the point. As it is, the defendants argue only that this factor is "not decisive." (ECF

17  No. 128 at 16–17.) That is strictly accurate. *See Smith*, 746 F.2d at 590 ("No one of the *Hummell*

18  factors . . . is necessarily decisive . . . ."). But it underestimates the importance of this factor. The

19  Ninth Circuit has said: "Generally, when an employee participant brings suit under ERISA,

20  whether it is against the trustees or the employer, the resources available to the pensioner are

21  limited." *Smith*, 746 F.2d at 590. "Not to award fees" in such a case would make "the grant of

22  federal jurisdiction" a "gesture" that "few [plaintiffs] could avail themselves of" and would

23  "frustrat[e]" ERISA's "basic purpose." *Id.* (quoting *Hall v. Cole*, 412 U.S. 1, 13 (1973)). "*Based

24  on this [ability-to-pay] factor alone*," consequently, "absent special circumstances, a prevailing

25  ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant." *Smith*,

26  746 F.2d at 590 (emphasis added). The defendants' (presumed) ability to pay thus weighs heavily

27  in favor of awarding Mr. Nagy fees.

28

United States District Court
Northern District of California

### 1.2.3    Deterrence

"The next factor considers whether awarding fees in this matter will deter other employers from denying meritorious benefit claims in similar circumstances." *Rangel*, 2016 WL 1449539 at *2; *see, e.g., Smith*, 746 F.2d at 490. On balance, this factor has no significant effect on the fee analysis in this case. On the one hand, successful suits like Mr. Nagy's should "deter trustees from opposing employee participant claims when the amount and reasonableness of the employee's claim are such that the plaintiff's chances of success are great." *Smith*, 746 F.2d at 590. At the same time, however, "some plaintiffs bring frivolous lawsuits . . . and awarding attorney's fees in such a scenario would not — and should not — deter trustees from opposing such claims." *Rangel*, 2016 WL 1449539 at *2 (citing *Smith*, 746 F.2d at 590). Here, Judge Gilliam found this to be a "close case." (ECF No. 89 at 19.) So it does not seem that the defendants engaged in behavior from which they should be deterred. They simply reached one decision about Mr. Nagy's health — and Judge Gilliam held that they were mistaken. The undersigned concludes that "this factor weighs in favor of awarding attorney's fees, albeit only slightly." *Rangel*, 2016 WL 1449539 at *2.

### 1.2.4    Benefiting other parties

The fourth *Hummell* factor asks whether Mr. Nagy "sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA." *Smith*, 746 F.2d at 590. The parties do not suggest that this case involved a significant question under ERISA, so this consideration weighs only the question of whether Mr. Nagy sought to, or did, benefit others.

There seems to be no dispute that Mr. Nagy did not bring this suit to benefit others. He sought only to have his own disability recognized and his own individual claim paid. He did not sue on others' behalf; he did not seek to have a term in the ERISA plan clarified (which could have affected other plan participants). And Mr. Nagy concedes that "the fact that [he] prevailed here does not automatically provide additional benefits to other plan participants." (ECF No. 137 at 11.) He does suggest that, because of the outcome here, "other plan participants . . . might be more willing to seek judicial review of denials of meritorious claims," so that "his initiative in

1    challenging the plan's decision will benefit participant whose claims might otherwise be denied."

2    (*Id.*) (quoting *Langston v. N. Am. Asset Dev. Corp.*, 2010 WL 330085, * (N.D. Cal. Jan. 20,

3    2010)).[48] But this is a remote benefit. It adds little to the present analysis. For this benefit will exist

4    in every case in which an ERISA plaintiff achieves "some success on the merits," clearing *Hardt's*

5    initial hurdle. If the "benefit others" factor is read as Mr. Nagy reads it, it would add nothing to

6    that initial "success" requirement. That cannot be the most useful way to understand and apply this

7    *Hummell* factor. The undersigned thus concludes that this factor does not weigh in favor awarding

8    fees.

9

10        **1.2.5    Relative merits of parties' positions**

11        "The fifth *Hummell* factor, the relative merits of the parties' positions, is, in the final analysis,

12    the result obtained by the plaintiff." *Smith*, 746 F.2d at 590. This consideration does not expect a

13    plaintiff to score an unqualified triumph. Instead, in discussing this factor, the Ninth Circuit has

14    said:

15            [T]he fee award should not be reduced simply because the plaintiff failed to prevail
             on every contention raised in the lawsuit. [Citation omitted]. Litigants in good faith

16           may raise alternative legal grounds for a desired outcome, and the court's rejection
             of or failure to reach certain grounds is not a sufficient reason for reducing a fee.

17           The result is what matters.

18    *Smith*. 746 F.2d at 590–91 (quoting *Hensley*, 461 U.S. at 435). Thus, even a settlement that brings

19    a plaintiff "a portion of what he brought suit to recover" can be enough to carry a claimant across

20    the "'statutory threshold' entitling him to recover fees from the defendant." *Smith*, 746 F.2d at 591

21    (quoting *Hensley*, 461 U.S. at 433); *see Rangel*, 2016 WL 1449539 at *3 (where settlement

22    yielded "some portion" of what plaintiff sought, court "weighs this factor in favor awarding

23    attorney's fees").

24

25

26

27    [48] In *Langston,* Judge Illston later changed her holding on the attorney's hourly rate. *See Langston v.
      N. Am. Asset Dev. Corp. Grp. Disability Plan*, 2010 WL 1460201 (N.D. Cal. Apr. 12, 2010). The order

28    on reconsideration in *Langston* did not affect the material quoted in the main text here.

REPORT & RECOMMENDATION
No. 14-cv-00038-HSG                    13

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    This may be the best place to address two of the defendants' arguments. First, the defendants

2    suggest that the fee request should be denied or reduced because Judge Gilliam found this case to

3    be a "close case." (ECF No. 128 at 7, 11, 16.) It is unclear why this should counsel denying or

4    reducing fees. It is unclear why the state of affairs ultimately found to exist — a "close case" as to

5    whether Mr. Nagy was disabled under the policy — should affect attorney's fees one way or the

6    other. It is harder still to say why this should reflect *negatively* on the work of the plaintiff's

7    lawyer. The reasoning might more plausibly run the other way around. It is harder to make sure

8    that a "close case" comes out in your client's favor than it is to bring home an easy win. Harder

9    work, one would think, to stable a horse who is given to bolting off than one who is already

10   heading through the gate. A "close" result for the client might well justify a larger fee.

11   Second, the defendants urge the court to deny or reduce the sought fees because Judge

12   Gilliam's decision depended partly on a "late" disability award from the Social Security

13   Administration (SSA). *See* (ECF No. 128 at 9–10, 16.) Some ten weeks before the bench trial in

14   this case, the SSA granted Mr. Nagy disability benefits. (*See id.* at 9.) For whatever reason, this

15   decision was not submitted at trial; four days after the trial, though, Judge Gilliam allowed Mr.

16   Nagy to submit the decision. (*Id.*) The defendants argue that this "late" award warrants denying or

17   reducing the requested fees. (*Id.* at 9–10, 16.) The undersigned disagrees. Judge Gilliam deemed

18   the award "necessary" to his analysis. *See* (Order – ECF No. 89 at 13–15, 21 ["[T]he SSA

19   Decision is necessary to conduct an adequate de novo review of Nagy's claims."]). It is therefore

20   hard to conclude, under *Hummell*, that that same SSA decision — whenever admitted —

21   constitutes a "special circumstance" that should defeat or diminish a fee request under

22   § 1132(g)(1).

23                                              *   *   *

24   Taking all this into view, and particularly given the Ninth Circuit's admonition that successful

25   ERISA plaintiffs "should ordinarily recover attorney's fees," the court concludes that Mr. Nagy is

26   entitled to attorney's fees under § 1132(g)(1). No "special circumstances" justify departing from

27   that normal rule. The court thus turns to the question of *How much?* What constitutes a reasonable

28   fee award in this case?

1    **2.  The Requested Fees are Reasonable**

2        **2.1 Legal Standard**

3        "To calculate attorney's fees awarded under § 1132(g)(1), district courts utilize a two-step

4    hybrid lodestar/multiplier approach." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir.

5    2007).  "First, the court establishes a lodestar by multiplying the number of hours reasonably

6    expended on the litigation by a reasonable hourly rate." *Id.* "The party seeking fees bears the

7    burden of documenting the hours expended in the litigation and must submit evidence supporting

8    those hours and the rates claimed." *Id.* at 945–46 (citing *Hensley,* 461 U.S. at 433). "In

9    determining the appropriate lodestar amount, the district court may exclude from the fee request

10   any hours that are 'excessive, redundant, or otherwise unnecessary.'" *Welch*, 480 F.3d at 946

11   quoting *Hensley*, 461 U.S. at 434). "In addition to setting the number of hours, the court must also

12   determine a reasonable hourly rate, 'considering the experience, skill, and reputation of the

13   attorney requesting fees.'" *Welch*, 480 F.3d at 946 (quoting *Chalmers v. City of Los Angeles,* 796

14   F.2d 1205, 1210 (9th Cir. 1986)). "Second, in rare and exceptional cases, the district court may

15   adjust the lodestar upward or downward using a multiplier based on facts not subsumed in the

16   initial lodestar calculation." *Welch*, 480 F.3d at 946 (citing *Van Gerwen v. Guarantee Mut. Life*

17   *Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000)).

18

19        **2.2 Rates**

20        Mr. Padway asks for an hourly rate of $675 for his time and $195 for that of his paralegal, Ms.

21   Phillips. The court finds these rates reasonable.

22        The court must determine a reasonable hourly rate based on the "experience, skill, and

23   reputation of the attorney requesting fees." *Chalmers*, 796 F.2d at 1210. Setting this rate is

24   inherently difficult. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). To determine a reasonable

25   hourly rate, the court looks to "the rate prevailing in the community for similar work performed by

26   attorneys of comparable skill, experience, and reputation." *Chalmers*, 796 F.3d at 1210–11. The

27   relevant community is typically the forum community. *Schwarz v. Sec'y of Health & Human*

28   *Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). To inform and assist the court in making this assessment,

United States District Court
Northern District of California

1   "the burden is on the fee applicant to produce satisfactory evidence — in addition to the attorney's

2   own affidavits — that the requested rates are in line with those prevailing in the community."

3   *Blum*, 465 U.S. at 895 n.11. An attorney's own declaration about the reasonableness of the claimed

4   rate is itself insufficient to meet the plaintiff's burden. *Jordan v. Multnomah Cnty.*, 815 F.2d 1258,

5   1263 (9th Cir. 1987). Declarations by attorneys regarding the prevailing market rate in the

6   community can suffice to establish a reasonable hourly rate. *Widrig v. Apfel*, 140 F.3d 1207, 1209

7   (9th Cir. 1989); *accord Rangel*, 2016 WL 1449539 at *7 ("[D]eclarations of the prevailing market

8   rate in the relevant community . . . are sufficient to establish the appropriate billing rate for

9   lodestar purposes.") (quoting *Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1547 (9th Cir.

10  1992), *opinion vacated in part on denial of reh'g,* 984 F.2d 345 (9th Cir. 1993) (brackets and

11  internal quotation marks omitted in *Rangel*)); *see, e.g., Welch*, 480 F.3d at 947 (considering

12  "declarations from comparable ERISA lawyers attesting" to market rate). Courts have the

13  discretion to reduce the hourly rate for tasks that less skilled persons could have performed.

14  *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1148 (9th Cir. 2001).

15

16          ### 2.2.1   The requested rates are reasonable

17          The court concludes that the requested rates are reasonable. The declarations that the plaintiff

18  has submitted sufficiently establish that $675 per hour for Mr. Padway and $195 per hour for Ms.

19  Phillips reflect the prevailing rates in the Northern District for (in a word) comparable work. The

20  court is moved in this respect especially by the fee awards of other courts, which have given Mr.

21  Padway a $675 rate or rates close to that in past years. The $195 rate for Ms. Phillips, too,

22  comports with prevailing rates for equivalent work in this jurisdiction.

23

24          ### 2.2.2   The defendants' arguments

25          Against the plaintiff's evidence the defendants array mostly legal or policy arguments

26  challenging the requested rates as objectionably high. The court acknowledges the defendants'

27  concern that, under the governing approach to setting such rates in ERISA fee-shifting cases,

28  defendants face mostly self-serving declarations that effect an ever-increasing upward rate spiral,

which not only ratchets fees up but does so at a pace that, at least in some cases, can far outstrip objective value.[49] The court finds no clear justification in Ninth Circuit precedent, however, for invoking that more policy-like consideration to tamp down a rate that is otherwise supported by evidence and that otherwise meets the criteria of the governing analysis.

The defendants' other rate arguments have less facial merit and must be rejected. For example, the defendants insist that,

> [Mr.] Nagy offers no evidence that <u>paying clients</u> in ERISA matters are paying the rates sought by Mr. Padway. The $675 rate is a manufactured rate *that his ERISA litigation clients do not actually pay* and thus does not reflect a true market rate. In *Kochenderfer v. Reliance Standard Life Ins. Co.,* 2010 WL 1912867 (S.D. Cal. 2010), the court reduced the attorneys' requested rates by $100 each when the plaintiff *failed to establish that a paying client would pay these rates* for work of similar complexity.
>
> Similarly, here, Plaintiff's counsel does not offer evidence that paying clients pay his attorneys' purported rates. . . .

(ECF No. 128 at 18–19) (underlining in original) (other emphases added).

This court expresses no view on the result in *Kochenderfer*. It appears to the undersigned, however, that the defendants here make a subtle but decisive error. In *Welch*, *supra,* the Ninth Circuit rejected a substantively identical argument to the one that the defendants advance here. *See Welch*, 480 F.3d at 946. The district court in that ERISA case had reduced an attorney's requested fee from "$375 and $400 per hour" to what it deemed a "reasonable rate" of $250 per hour. *Id.* It did so partly because "[t]here [was] no evidence that Plaintiff's counsel ever collects $375 or $400 per hour from paying clients except as part of an award of attorneys' fees issued by a court." *Id.* The Ninth Circuit held that "the district court clearly erred":

> *[T]he district court erred in reducing Welch's requested rate because Kantor & Kantor does not collect $375 and $400 from its paying clients*. We have repeatedly held that the determination of a reasonable hourly rate is not made by reference to the rates actually charged the prevailing party. Rather, billing rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.

---

[49] *See* ECF No. 128 at 18–20.

1   *Id.* (citations and quotations omitted) (emphasis added). The court realizes that the distinction

2   between what an attorney "collect[s] . . . from its paying clients" and what comparable lawyers

3   "charge their paying clients" may be subtle. But that is the rule that the Ninth Circuit has "clearly"

4   and "repeatedly" insisted on. And it is hard to see how the defendants' argument on this head

5   differs from the one that the Ninth Circuit "clearly" rejected in *Welch. See also Barboza v. Cal.*

6   *Ass'n of Prof'l Firefighters*, 2016 WL 3125996, at *8 (E.D. Cal. June 3, 2016) ("[T]he court does

7   not refer simply to the rates the attorney actually charged, but determines what rate is paid to

8   attorneys of comparable ability and reputation for similarly complex work in the relevant

9   community.").

10   The defendants next argue that the court should use Mr. Padway's "historical" (and lower)

11   hourly rates, rather than his claimed current rate of $675.[50] If using current rates is "not

12   automatic," as the defendants say, still, using historical rates lies well within the district court's

13   discretion. *See, e.g., Gates*, 987 F.2d at 1406–07. The Ninth Circuit's decision in *Welch* again

14   provides pertinent guidance:

15   > [D]elay in payment . . . is a factor properly considered in arriving at a reasonable
   > hourly rate. District courts have the discretion to compensate plaintiff's attorneys
16   > for a delay in payment by either applying the attorneys' current rates to all hours
   > billed during the course of the litigation or using the attorneys' historical rates and
17   > adding a prime rate enhancement.

18   *Welch*, 480 F.3d at 947 (citing *In re Wash. Pub. Power Supply Sys. Secs. Litig.,* 19 F.3d 1291, 1305

19   (9th Cir. 1994)) ;*accord, e.g., Gates*, 987 F.2d at 1406–07 ("We long have recognized that district

20   courts have the discretion to compensate prevailing parties for any delay in the receipt of fees by

21   awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use

22   [of the] funds.") (citing cases). The undersigned is not convinced that using Mr. Padway's current

23   rate is unreasonable.

24

25

26

27

---

28   [50] *Id.* at 23–24.

United States District Court
Northern District of California

**2.3 Hours Spent**

The defendants also challenge the amount of time that Mr. Padway and Ms. Phillips spent working on this case. They have submitted a list of itemized objections to the individual entries on Mr. Padway's and Ms. Phillips's billing records. (ECF No. 128-1.) Their review of the plaintiff's time entries is helpfully thorough. Nevertheless, the defendants have not submitted *proof* to counter the plaintiff's time request. They mainly argue that, in one way or another, Mr. Padway and Ms. Phillips spent "excessive" time on almost everything that they did. The defendants also complain that Mr. Padway has block-billed some of his time, and that Ms. Phillips performed some "secretarial" work that should not be included in the fees. They propose their own reasonable amount of time for the challenged entries. (*See id., passim*.)

The lack of contrary proof may alone be enough to reject the defendants' proposed reductions in the requested hours. The Ninth Circuit has said: "The party opposing the fee application has a burden of rebuttal that requires *submission of evidence* to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian,* 987 F.2d 1392, 1397-98 (9th Cir. 1992) (citing *Blum,* 465 U.S. at 892 n.5, and *Toussaint v. McCarthy,* 826 F.2d 901, 904 (9th Cir. 1987)) (emphasis added); *accord, e.g., Geertson Seed Farms v. Johanns,* 2011 WL 5403291, *4 (N.D. Cal. Nov. 8, 2011); *L.H. v. Schwarzenegger,* 645 F. Supp. 2d 888, 897 (E.D. Cal. 2009) ("The opposing party can rebut this [fees request] *with evidence* that the time charged is inaccurate or unreasonable.") (emphasis added). The Supreme Court in *Blum*, *supra*, indicated the potentially decisive effect of not offering evidence to challenge how a fee claimant's attorney has spent her time:

> We decline to consider petitioner's further argument that the hours charged by respondent's counsel were unreasonable. . . . [P]etitioner failed to submit to the District Court any evidence challenging the accuracy and reasonableness of the hours charged, or the facts asserted in the affidavits submitted by respondent's counsel. ***She therefore waived her right to an evidentiary hearing in the District Court***.

*Blum,* 465 U.S. at 892 n. 5 (citation omitted) (emphasis added).

United States District Court
Northern District of California

The court nevertheless considered all of the defendants' itemized objections. It found little that seemed visibly unreasonable. Overwhelmingly, the defendants' proposed reductions amount to their criticism of how Mr. Padway prepared and tried his case. The court is not inclined to second-guess how Mr. Padway works. In this respect, too, the Ninth Circuit has offered prescriptive guidance:

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical . . . [contingency] case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (civil-rights case). This basic observation applies here, as well.

That said, the following entries did strike the court as excessive to the point of being unreasonable. (The court identifies the individual time entries by the numbers that the defendants have usefully given them in their list of itemized objections.)

### ATTORNEY HOURS

| Entry # | Reason for reducing | Amount reduced (increments of an hour) |
|---|---|---|
| 9 | Excessive time for simple review | -0.2 |
| 12 | Excessive time for simple client communication | -0.1 |
| 14 | Excessive time for simple client communication | -0.2 |
| 18 | Short answer could have been reviewed more quickly | -0.2 |
| 24 | Duplicative of recent work. Block billing. | -0.4 |
| 34 | Simple communication | -0.4 |
| 36 | Simple review of scheduling. Block billing. | -1.7 |
| 37–38 | Duplicative | -1.2 |
| 45 | Simple task | -0.1 |
| 65 | Simple research | -0.4 |
| 143 | Entries appear not to have been kept contemporaneously | -5.1 |

United States District Court
Northern District of California

| 144 | Costs entries appear not to have been kept contemporaneously | -0.5 |
| 156 | Simple review of minute order | -0.1 |
| 161 | Fee motion was prepared, meant only to be re-filed | -1.5 |
| 164 | Fee motion already prepared | -6.5 |

### PARALEGAL HOURS

| Entry # | Reason for reducing | Amount reduced |
|---|---|---|
| 171, 173–74, 176–77, 181–82, 185–86, 189, 195, 200, 213–14, 228, 231–32, 254, 256, 258–60, 266, 277 | Secretarial work. Does not warrant paralegal rates. | -16.3[51] |
| 224 | Simple task. Partly secretarial. | -0.2 |
| 229–30 | Simple task. | -0.6 |
| 270 | Duplicative of attorney work | -1.3 |

This amounts to a reduction of 30.5 hours in Mr. Padway's time and $20,452.50 in his fee request. It amounts to a reduction of 18.4 hours in Ms. Phillips's time and $3588 from the fee request for her work. Subtracting this from the requested total fee of $272,710.50, these reductions yield a total initial lodestar of $248,670.00.

The court has a further degree of discretion in this area. The Ninth Circuit has said: "[T]he district court can impose a small reduction — a 'haircut' — based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 531 F.3d 1106, 1112 (9th Cir. 2008). In the circumstances of this case, in view of the parties' discussion at the recent hearing, the undersigned recommends that the district court apply this 10% reduction to the plaintiff's attorney's requested hours. A 10% reduction yields 339.9 attorney and 81.4 paralegal hours. At their respective rates, this yields an initial combined lodestar of $245,305.50.

---

[51] These entries totaled to 24.4 hours. The court then reduced this by two-thirds, or 16.3 hours, to arrive at a final figure that allowed 8.1 billed "secretarial" hours. *See Rangel*, 2016 WL 1449539 at *5 "Clerical work, which includes . . . calendaring, . . . is not billable.") (citing *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) and *Klein v. Law Offices of Scott Carruthers*, 2015 WL 3626946, *5 (N.D. Cal. June 10, 2015)).

United States District Court
Northern District of California

**2.4 Adjusting the Lodestar — Additional Factors**

"Next, in appropriate cases, the district court may adjust the 'presumptively reasonable'

lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69–

70 (9th Cir.1975), *cert. denied,* 425 U.S. 951 (1976), that have not been subsumed in the lodestar

calculation." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (quoting

*D'Emanuele v. Montgomery Ward & Co.,* 904 F.2d 1379, 1383 (9th Cir. 1990)). "The *Kerr* factors

are:

> 1. The time and labor required;
>
> 2. The novelty and difficulty of the questions;
>
> 3. The skill requisite to perform the legal services properly;
>
> 4. The preclusion of other employment due to acceptance of the case;
>
> 5. The customary fee;
>
> 6. The contingent or fixed nature of the fee;
>
> 7. The limitations imposed by the client or the case;
>
> 8. The amount involved and the results obtained;
>
> 9. The experience, reputation, and ability of the attorneys;
>
> 10. The undesirability of the case;
>
> 11. The nature of the professional relationship with the client;
>
> 12. Awards in similar cases.

*Intel*, 6 F.3d at 622 (citing *Kerr,* 526 F.2d at 70); *accord, e.g., Delson v. CYCT Mgmt. Grp., Inc.*,

2013WL1819265, *3 (N.D. Cal. Apr. 30, 2013). "The lodestar amount presumably reflects the

novelty and complexity of the issues, the special skill and experience of counsel, the quality of

representation, and the results obtained from the litigation." *Intel*, 6 F.3d at 622 (citing

*D'Emanuele,* 904 F.2d at 1383).

The undersigned sees nothing in the *Kerr* factors that warrants adjusting the initially calculated

lodestar. The respective *Kerr* factors have already been accounted for somehow in that lodestar, or

have not been addressed by the evidence submitted, or seem simply irrelevant to this particular

case.

United States District Court
Northern District of California

1

**CONCLUSION**

2    The undersigned recommends that the presiding district judge grant the plaintiff's motion for

3  attorney's fees, but reduce the amount requested as described above, and, in the end, award the

4  plaintiff a total of $245,305.50 in attorney's fees.

5    Any party may serve and file specific written objections to this recommendation within 14

6  days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2); Civil

7  L.R. 72-3. Failure to file written objections within the specified time may waive the right to appeal

8  the District Court's order.

9    **IT IS SO RECOMMENDED.**

10    Dated: January 17, 2017

11

12                                LAUREL BEELER
                                  United States Magistrate Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California